[Cite as *State v. Shilbaya*, 2018-Ohio-1991.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO

      Plaintiff-Appellee

-vs-

MUSHSEN A. SHILBAYA

      Defendant-Appellant

JUDGES:
Hon. John W. Wise, P. J.
Hon. W. Scott Gwin, J.
Hon. William B. Hoffman, J.

Case No. 2017 CA 00139

O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. 2016 CR 02079 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 21, 2018 |


APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
PROSECUTING ATTORNEY
RONALD MARK CALDWELL
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton, Ohio 44702-1413

For Defendant-Appellant

DONOVAN HILL
116 Cleveland Avenue North
808 Courtyard Square
Canton, Ohio 44702

*Wise, P. J.*

**{¶1}** Appellant Mushsen A. Shilbaya appeals his conviction on one count of kidnapping and one count of gross sexual imposition following a jury trial in the Stark County Court of Common Pleas.

**{¶2}** Appellee is the State of Ohio.

## STATEMENT OF THE FACTS

**{¶3}** On November 15, 2016, the Stark County Grand Jury indicted Appellant, Mushsen A. Shilbaya, on one count of kidnapping, a violation of R.C. §2905.01(A)(4), a second-degree felony, and one count of gross sexual imposition, a violation of R.C. §2907.05(A)(1), a fourth degree felony.

**{¶4}** Appellant's charges arose from an incident where Appellant, who was working as an Uber driver on the night in question, picked up a fare, C.D., who reported that he drove her to a place against her will and forced her to masturbate him.

**{¶5}** On June 19, 2017, a jury trial commenced in this matter.

**{¶6}** At trial, the jury heard testimony from the victim C.D., Detective Aaron Williams and Appellant.

**{¶7}** C.D. testified that on July 10, 2016, she went to downtown Canton with a group of people to "catch Pokemon." Her husband was not with her because he had to work. The Pokemon plan fell through, and the group instead went to George's Bar where she had a burger and a drink. Next, C.D. took a cab to another Canton bar, Mike's, where she was joined by her son and her sister. When Mike's closed for the evening, C.D. walked to the nearby White Crown, another Canton bar. She recalled that she had one

drink there. She stated that she tried to call an Uber to take her home, but that she had trouble getting through because it was peak time for Uber rides. (T. at 151-167).

{¶8} C.D. testified that she did not receive a notification text from Uber when her driver arrived. She said that instead, her driver, Appellant, came into the bar to get her. C.D. stated that she had used Uber many times over the past year and felt safe with the service. She said that she followed Appellant to his car and got into the backseat. She testified that she told Appellant where her home was, but that Appellant just drove around, missing turns and not following her directions. She claims that she initially thought Appellant was running up the tab during the peak time by driving around in this manner. She said that Appellant eventually completed a loop and returned to the White Crown. She testified that she got out of the car and went back into the bar to see if any of her friends were still there who could give her a ride home. She said that because her friends had left, she returned to Appellant's car, getting into the front seat this time. She explained that she thought that there might be a language problem between the two, and that she might be able to direct Appellant better by pointing out the directions to him. (T. at 167-172).

{¶9} C.D. testified that Appellant again ignored her directions and just drove aimlessly. She stated that during this drive, Appellant reached over and groped her breasts. She pushed his hand away and told him to stop. She said that she then began to feel very uncomfortable and asked Appellant to stop the car and let her out. When Appellant ignored her request, she tried to open the door, only to find it locked. She recalled that Appellant then took her purse, which contained her cell phone, and threw it in the back seat of the car. (T. at 173-178)

**{¶10}** C.D. testified that Appellant then starting groping and grabbing her breasts, thigh, bottom, and vagina. She recalled that he then grabbed her hand and had her grab his exposed penis. C.D. stated that she began crying and begged him to just take her home, and she wouldn't tell anyone. She says that she noticed that they were on property of the Timken Company, so she told him that there were probably security cameras there. She said Appellant then began to drive back in the direction of her neighborhood. Instead of taking her home, however, he pulled over and began groping her again and pulling her hand onto his exposed penis. C.D. testified that Appellant ejaculated onto her hand. (T. at 178-182).

**{¶11}** C.D. went on to testify that she begged Appellant to just take her home, and that he eventually drove in that direction. When they were close to her house, C.D. told Appellant that she saw her husband looking out the window of their home and that he would kill Appellant if he found out what he had done. Appellant then drove past the house, but then let her out of the vehicle to walk home.

**{¶12}** C.D. testified that when she got home she did not tell anyone what had happened and immediately took a shower. She recalled that she also tried to make a report of the incident with Uber. (T. at 186-187). She stated that when she did not receive a response from Uber after a couple days, she went to the Canton Police Department and reported the crimes. (T. at 188-191). She explained that she felt awful about what had happened to her, and she was worried that Appellant was still driving and could be attacking other people. (T. at 188). C.D. told the jury that she also turned over the shirt she was wearing that night. The shirt had two separate semen stains on it. (T. at 191).

{¶13} When the shirt was tested by BCI, it was determined that Appellant was the source of the DNA in these semen stains. (T. at 182-195, 228-230).

{¶14} Detective Williams testified that his investigation revealed that the records he obtained from Uber regarding the route taken on the night in question lasted for approximately 40 minutes and that they traveled just seven miles. (T. at 226, 236). Det. Williams also testified that the semen stains on C.D.'s shirt were a match to Appellant's DNA. (T. at 182-195, 228-230).

{¶15} The jury also heard testimony from Appellant Shilbaya who testified in his defense. During his testimony, Appellant claimed that the sexual encounter between him and C.D. was consensual. Appellant told the jury that C.D. never put her address in the GPS, which is what a rider normally does. (T. at 246-247). He stated that when she got back in his car and got into the front seat after she had him return to the White Crown, she began making sexual advances toward him. (T. at 252). He testified that C.D. exposed her breasts to him, touched his genitals, and caused him to ejaculate. (T. at 252-254).

{¶16} At the conclusion of the trial, following deliberations, the jury found Appellant guilty of both counts.

{¶17} The trial court merged the gross sexual imposition offense with the kidnapping conviction and sentenced Appellant to four (4) years in prison.

{¶18} Appellant now appeals, raising the following error for review:

ASSIGNMENT OF ERROR

{¶19} "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

**I.**

**{¶20}** In his sole assignment of error, Appellant argues that his convictions were against the manifest weight and sufficiency of the evidence. We disagree.

**{¶21}** On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶22}** On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also, State v. Thompkins,* 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

**{¶23}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and

credibility of each witness, something that does not translate well on the written page."

*Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

**{¶24}** Appellant, in the case *sub judice*, was convicted of kidnapping, in violation

of R.C. §2905.03(A)(4) and gross sexual imposition, in violation of R.C. §2907.05(A)(1),

which state, in relevant part:

R.C. §2905.01 Kidnapping

(A) No person, by force, threat, or deception, or, in the case of a

victim under the age of thirteen or mentally incompetent, by any means,

shall remove another from the place where the other person is found or

restrain the liberty of the other person, for any of the following purposes:

\*\*\*

(4) To engage in sexual activity, as defined in section 2907.01 of the

Revised Code, with the victim against the victim's will;


R.C. §2907.05 Gross Sexual Imposition

(A) No person shall have sexual contact with another, not the spouse

of the offender; cause another, not the spouse of the offender, to have

sexual contact with the offender; or cause two or more other persons to

have sexual contact when any of the following applies:

(1) The offender purposely compels the other person, or one of the

other persons, to submit by force or threat of force.

**{¶25}** Here, Appellant argues that the testimony and evidence presented by the

state in support of the above elements was not credible.

**{¶26}** When viewing the evidence in the light most favorable to the prosecution, we find that sufficient evidence was presented to support Appellant's convictions. At trial, C.D. testified that after picking her up, Appellant did not drive her home as she wished, rather he drove her around in his car and would not let her out when asked. C.D. also testified that while she was in his car, Appellant engaged in unwanted sexual contact with her and caused her to do the same.

**{¶27}** Additionally, evidence was presented that Appellant drove C.D. around in his car for approximately 40 minutes but only traveled 7 miles. Evidence that semen stains on C.D.'s shirt matched Appellant's DNA was also presented to the jury.

**{¶28}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, 2003 WL 723225, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, 2003 WL 21291042, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).

{¶29} The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶30} Upon review, we find Appellant's convictions were supported by sufficient evidence and are not against the manifest weight of the evidence. Any rational trier of fact could have found the essential elements of kidnapping and gross sexual imposition proven beyond a reasonable doubt. Nor is this the exceptional case in which the evidence weighs heavily against a conviction.

{¶31} Appellant's sole assignment of error is overruled.

{¶32} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

By: Wise, P. J.

Gwin, J., and

Hoffman, J., concur.

JWW/d 0515